**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE**

**CIVIL ACTION NO. 04-391-DLB**

**RONNIE L. DOTSON**                                                     **PLAINTIFF**

vs.                  **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                        **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Ronnie L. Dotson filed an application for Disability Insurance Benefits (DIB) on July 10, 2002. Plaintiff, who was 45 years old at the time of the hearing, has an eighth grade formal education. He alleges a disability onset date of March 1, 2002, due to back and right arm/shoulder pain, and bleeding stomach and bowels. (Tr. 189, 200) His application was denied initially (tr. 40-43) and on reconsideration (tr. 45-49). Plaintiff then requested a hearing before an administrative law judge, which hearing was held on May 13, 2003, in Prestonsburg, Kentucky. (Tr. 184-204) On June 24, 2003, the ALJ ruled that Plaintiff was not under a disability and so was not eligible for DIB payments. This decision was approved by the Appeals Council on October 21, 2004. (Tr. 3)

The instant action was filed on November 8, 2004. It has now culminated in cross motions for summary judgment.

## II.  DISCUSSION

**A.      Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.      The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 12).  At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, polysubstance abuse, and a substance induced major depressive disorder. (Tr. 13)  The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1 to Subpart P of Regulations No. 4.  (*Id.*)

At Step 4, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a significant range of work at the light exertion level, being able to lift or carry twenty pounds occasionally and ten pounds frequently, and being able to stand, walk, or sit up to six hours per activity per workday, with only occasional stooping.  The ALJ restricted Plaintiff from any prolonged standing or sitting, and from performing any overhead work with his right upper extremity.  The ALJ concluded that, nonexertionally, while Plaintiff has a low level of literacy, he is able to carry out and sustain simple tasks, adapt to routine changes, and relate in an adequate manner.  He found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 16)  Because Plaintiff's past work as a truck driver and coal miner were performed above the light level of exertion, the ALJ determined that, even with his RFC, Plaintiff was unable to perform this past relevant work.  (*Id.*)

The ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found that there are jobs existing in significant numbers in the national economy

3

that Plaintiff could perform, including laundry worker, cleaner, and food service worker at the light level, and product assembler, grader/sorter, and bench assembler at the sedentary level. (Tr. 17)  This conclusion resulted from testimony by a vocational expert ("VE"), in response to hypothetical questions involving a person of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 202)

**C.   Analysis**

Plaintiff raises one challenge in his appeal.  He argues the ALJ's decision was fatally flawed by his failure to address certain opinions of consultative examiner, Dr. Eric Johnson.

Dr. Johnson's August 22, 2002, mental status evaluation of Plaintiff culminated in the following prognosis:

> He [Mr. Dotson] has been in therapy for about three months but has not been prescribed medication because of his drug use.  He apparently is complying with treatment at least at the present time.  He has made no significant progress, and the examiner would expect the impairment to be a problem for more than a year.  The major depression might be amenable to treatment, but the personality disorder and drug use appear to be more consistent traits, which would be hard to remediate.
>
> He can understand and carry out simple instructions.  He would not have much luck maintaining his concentration and persistence over a period of time because of the depression, substance abuse, and physical problems.  He would not relate very well to supervisors, and in this examiner's opinion he would have difficulty with co-workers as well.  He cannot respond to pressures in a typical work setting.

(Tr. 115) Dr. Johnson's report on Plaintiff's mental status also stated that a psychological evaluation of Plaintiff might shed light on whether Mr. Dotson is malingering and provide a more accurate assessment of his intellectual capabilities. (*Id.*)  However, it does not appear from the record that any such psychological evaluation was done.

4

Dr. Johnson's evaluation was provided to non-examining consulting psychologist Dr. Ilze Sillers.  Because Dr. Johnson "raised some questions about credibility" (tr. 116), Dr. Sillers recommended information be sought from Plaintiff's former employer and from Mountain Comprehensive Care Center (*id.*), where Plaintiff had recently started receiving mental health care and treatment.  The Mountain Comprehensive Care Center records were submitted (tr. 101-10), but no formal opinions or mental functional capacity limitations were provided by this treating source.  Also submitted was a questionnaire from Plaintiff's most recent employer (tr. 81-82).  Dr. Sillers then completed a Psychiatric Review Technique form (tr. 141-54), finding Plaintiff mildly limited in activities of daily living and social functioning, and moderately limited in maintaining concentration, persistence, or pace (tr. 151).  Dr. Sillers also completed a Mental Residual Functional Capacity Assessment (tr. 129-32), noting no significant limitations in Plaintiff's functional capacity from a mental standpoint, aside from his ability to maintain attention and concentration for extended periods, ability to interact appropriately with the general public, and ability to respond appropriately to changes in the work setting, for each of which she noted Plaintiff to be moderately limited (*id.*).  In the explanatory section of the Assessment, Dr. Sillers conveys that

> Mr. Dotson's allegations of disabling mental restrictions are not fully credible. Dr. Johnson's opinions are given partial weight and partially adopted as these opinions are not fully supported by tx [treatment] records & employer report.
>
> Mr. Dotson is able to understand, remember, carry out & sustain simple tasks, adapt to routine changes, react in an adequate manner.

5

(Tr. 131) Non-examining consulting psychologist Dr. Ann Demaree also completed a Psychiatric Review Technique form (tr. 159-72) and Mental Residual Functional Capacity Assessment (tr. 155-58) duplicating Dr. Sillers' conclusions.

In determining Plaintiff's RFC, the ALJ adopted the opinions of Drs. Sillers and Demaree. Based upon his mental capacity, the ALJ found Plaintiff to be

> moderately limited in his ability to maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. He is able to carry out and sustain simple tasks, adapt to routine changes, and relate in an adequate manner.

(Tr. 16; 18, Finding No. 7)

Plaintiff submits that, in making this Finding, the ALJ failed to comply with Social Security Ruling 96-8p's requirement that he explain why medical source opinions conflicting with the his RFC assessment were not adopted. More specifically, that the ALJ did not explain his rejection of Dr. Johnson's comments that Mr. Dotson would have concentration and persistence problems, would not relate well to co-workers and supervisors, and cannot respond to typical workplace pressures. (Tr. 115)

These statements are, in fact, opinions of Dr. Johnson, offered based upon his mental status evaluation of Plaintiff. And these opinions conflict with that portion of the ALJ's RFC finding quoted above. A review of the decision fails to evidence an explanation for the ALJ's rejection of these opinions. Indeed, even an acknowledgment of them is noticeably absent. The ALJ refers only to Dr. Johnson's observations about Plaintiff's daily activities (tr. 13-14), and his diagnosis that Plaintiff has a major depressive disorder and polysubstance abuse (tr. 13, 15).

6

The Commissioner acknowledges the requirements of SSR 96-8p, but asserts Plaintiff failed in identifying what part of Dr. Johnson's opinions were not adopted by the ALJ and conflict with his RFC.  The Court finds the opinion and how it conflicts with the RFC were adequately spelled out, as noted above.  And while the Commissioner alternatively argues that the ALJ did explain why some of Dr. Johnson's opinions were not adopted, she fails to articulate where in the decision the ALJ did so.  Instead, the Commissioner suggests in a footnote that the Court has the power "to view the evidence independently to find support for a decision issued by the Commissioner." (Doc. #5, p. 10 at n.3) As a general proposition this may be true, but the cases Commissioner relies upon are inapposite to this case.

*Walker v. Secretary of Health & Human Services* was concerned with the permissible scope of record review generally, and did not involve SSR 96-8p or explaining conflicting medical source opinions specifically.  *Walker,* 884 F.2d 241, 245 (6th Cir. 1989).  *Heston v. Commissioner of Social Security,* though not actually involving SSR 96-8p, did involve a challenge based on the ALJ's failure to explain the weight given a medical source opinion.  *Heston,* 245 F.3d 528, 535-36 (6th Cir. 2001).  But a close reading of *Heston* actually supports Plaintiff's position, not the Commissioner's.  The medical source opinion in *Heston* was the treating physician's report summarizing his extensive treatment records.  The Sixth Circuit first noted that the ALJ should have discussed the report, but concluded the ALJ's failure to do so was harmless error because the doctor's summary relayed medical history, rather than actual opinions, and because any actual limitations offered by the treating physician were, in fact, included by the ALJ in the hypothetical presented to the VE.  *Id.*  That is not the case here.  The ALJ failed to address actual opinions of Dr.

Johnson about Plaintiff's workplace limitations due to his mental status. Nor were these limitations included by the ALJ in the hypothetical presented to the VE that the ALJ ultimately relied upon. (Tr. 202)[1]

Here, to reach a conclusion other than that certain of Dr. Johnson's opinions were randomly and improperly excluded by the ALJ would require the Court to speculate on the ALJ's assessment process. Perhaps the ALJ relied upon Dr. Sillers' general statement that Dr. Johnson's findings were only partially adopted. But if he did, he did not so state. And Dr. Sillers did not specify the basis for her limited acceptance of Dr. Johnson's findings, other than commenting generally that the findings were not supported by the treatment records and employer report. (Tr. 131) This lack of detail by Dr. Sillers is all the more reason why the ALJ should have acknowledged all medical source opinions and explained the weight being afforded to them and why. See 20 C.F.R. §§ 404.1513(a), 404.1527(f)(2)(ii), and SSR 96-8p. The Commissioner tries to provide this explanation by pointing out what she perceives are inconsistencies in the record. But whether they are, in fact, inconsistencies[2] and whether the ALJ did, in fact, rely upon them are determinations imposed upon the ALJ pursuant to the applicable regulations, not the role of counsel or this Court.

---

[1] The VE also opined that if she accepted the limitations offered by Plaintiff about his limitations from pain, difficulty dealing with people and nervousness, there would be no jobs available to him (tr. 203-04).

[2] The treatment records from Mountain Comprehensive Center, the only mental health treatment notes in the record, were few and of limited duration, and so how Dr. Johnson's findings were not fully supported by these limited records is unclear. The Commissioner also points out that the employer's report states Plaintiff was laid off, yet Plaintiff told Dr. Johnson he stopped working because of excessive bleeding. (Doc. #5, p. 11) But Dr. Johnson also reported Plaintiff said he had been fired everywhere he worked because of disagreements with supervisors. (Tr. 113) Certainly there are inconsistencies in the record on this point, but whether these inconsistencies are due to and should be held against Plaintiff must be determined by the ALJ, who did not question Plaintiff about this point at the hearing. This employer also reported Plaintiff was eligible for rehire, yet the ALJ found his physical RFC to be that for light work and the VE classified this past relevant work as medium to heavy skilled work. (Tr. 201)

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **GRANTED**.

A judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 13th day of February, 2006.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-391-DotsonMOO.wpd